COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, McClanahan and Senior Judge Coleman


K. R.

v.      Record No. 1837-03-1

YORK COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
FEBRUARY 3, 2004


FROM THE CIRCUIT COURT OF YORK COUNTY
Prentis Smiley Jr., Judge

(Stephen K. Smith, on brief), for appellant.

(Carla Blake Hook, Assistant County Attorney, on brief), for
appellee.


K.R. (mother) appeals a decision of the trial court terminating her parental rights to her

children, R.R., C.Y., and T.Y., pursuant to Code §§ 16.1-283(B) and (C).  On appeal, mother

contends the evidence was insufficient to support the termination.  Upon reviewing the record

and parties' briefs, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the trial court.  See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party in the trial court

and grant to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County

Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

So viewed, the evidence proved the children entered foster care on October 5, 2001,

following several incidents of physical neglect and lack of supervision.  The initial Foster Care

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Service Plan included the following "needs which must be met to achieve the goal [of return home] for the child[ren]:"

1) Child[ren] need[] a safe home with adequate supervision and nurturance.
2) Child[ren] need[] prompt and adequate medical care to ensure . . . continued growth and dev[e]lopment.
3) If need be, the child[ren] need[] to be provided with specialized medical care germane to . . . prior exposure to the HIV Virus.
4) Parents need to fully participate in all visitation with the child[ren].
5) Parents need to attend and fully participate in individual and family counseling.
6) Parents need to refrain from acts of commission or omission that tend to endanger the child[ren]'s life, health, or normal development.
7) Parents need to demonstrate the ability to place the child's physical and emotional needs ahead of their own.
8) Mother needs to continue to work with the Even Start Program to learn specific parenting techniques for the children . . . .
9) Parents need to secure and maintain a safe and stable living environment.
10) Parents need to make this agency aware of any changes in their circumstances, i.e. place of residence, other adults in the home, employment, etc.
11) Parents need to refrain from the abusive use of alcohol and/or the use of illegal substances.
12) Parents need to participate in permanency planning.
13) Parents need to follow all recommendations of the York-Poquoson Department of Social Services designed to promote the child[ren]'s return to the home.
14) Parents need to maintain eyes-on supervision of the children during visits in both the home and at York-Poquoson Department of Social Services.
15) Paramours of the parents or any other adults in the home need to be assessed by this agency in regards to their parental suitability.
16) Parents need to provide financial support for the child[ren].

Similarly, the plan listed mother's responsibilities, with a target date of October 2002, as follows: 1) to fully participate in visitation with the children as recommended by the Department, 2) participate in individual and family counseling, 3) work with professionals to

learn specific parenting techniques, 4) demonstrate an ability to place her children's physical and emotional needs above her own, 5) maintain a safe and stable living environment and "eliminate the presence of potentially hazardous objects or phenomena in the home," and 6) notify the Department of any changes in circumstances such as changes in residence, other adults in the home, and employment.

Social worker Kendall Stewart testified mother attempted to follow the requirements of the foster care service plan for approximately two months. By late December 2001, mother had quit her job after a brief period of employment, allowed her electricity to be turned off, failed to attend scheduled visits with her children, and failed to maintain contact with the agency. Furthermore, mother's participation in counseling was inconsistent, she was unable to provide the children with financial support, and she did not maintain a safe and stable living environment. At the time of the hearing, mother was living with her sister and her sister's four children.

Debbie Coleman, mother's therapist, testified that between October 2001 and the date of the hearing, mother had appeared for only ten appointments and had missed sixteen appointments. Mother admitted at trial that she was not in a position to be reunited with her children.

ANALYSIS

Mother argues the Department failed to establish that she did not substantially remedy the conditions which led to the children's foster care placement and that, therefore, the termination of her parental rights was not in the children's best interests.

To support this contention, mother notes that she completed the Even Start Program, the Family Focus Program, the Family Literacy Program, that she was currently employed, and that she was seeking appropriate housing.

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that (1) the termination is in the best interests of the child, (2) "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) despite those services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care."

We are mindful of the principle that "[t]he termination of residual parental rights is a grave, drastic and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), but we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).

The Department proved by clear and convincing evidence that mother, without good cause, failed "to substantially remedy" the conditions "which led to or required continuation of the child's foster care placement" within a reasonable period of time.

The children entered foster care because mother was unable adequately to supervise them and provide them with a stable, safe environment. Eighteen months after their placement in foster care, mother was still unable to provide for her children. Stewart reported mother failed to meet most of the required "needs" listed in the foster care plan.

Specifically, the evidence demonstrated that mother failed to maintain a safe and stable living environment because she moved several times while her children were in foster care, she allowed the electricity to be turned off in her residence, and was involved in a domestic violence incident. Mother "inconsistently participated in visitation with" her children and had not "visited with the children since April 29, 2002." On numerous occasions she simply did not

arrive for scheduled visitations with the children. Mother only "sporadically participat[ed] in individual therapy." Stewart explained mother "demonstrated a profound lack of understanding regarding" the emotional and physical needs of her children and that she "also demonstrated the inability to provide adequate food, clothing, and shelter for her children." Mother did not demonstrate an ability to put her children's physical and emotional needs ahead of her own by failing to maintain contact with the children either through scheduled visitation or by sending letters or pictures. Although mother participated in the Even Start Program with her children, "[t]here were several occasions where she didn't show up and the kids were brought there," disappointing the children and providing no prior notice of her inability to attend. She failed to maintain contact with the Department and inform the Department of changes in circumstances. She did participate in permanency planning although her influence over the planning was limited based on her not "having fulfilled the other goals." She left her employment after only two months in December 2001 and only worked sporadically thereafter. Stewart concluded that although mother had made "progress in a couple of areas . . . there hasn't been a great deal of significant progress."

Despite her contention that she had substantially corrected the conditions leading to her children's placement in foster care, she failed to make significant progress on most of her goals and responsibilities under the Foster Care Service Plan. Mother admitted at trial that she was not prepared to be reunited with the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court found that mother had not met the goals of the foster care plan. "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal

unless plainly wrong or without evidence to support it.'" <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).  The record supports the trial court's finding that the Department presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283 and establishing that termination of mother's parental rights is in the children's best interests.

Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>